06-0976-cv
Medrash v. Riley

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2006

Docket No. 06-0976-cv

(Argued: May 15, 2007          Decided: October 17, 2007)

_____

BETH MEDRASH EEYUN HATALMUD,

                    Plaintiff-Appellee,

          v.

MARGARET SPELLINGS,[*] in her official
capacity as Secretary of the
Department of Education,

                    Defendant-Appellant.

_____

Before:  NEWMAN, MINER, and KATZMANN, Circuit Judges.

        Appeal from a summary judgment in favor of plaintiff entered in the United States District Court for the Southern District of New York (Owen, J.) directing the payment with interest of the portion of Pell Grant funds that was withheld by defendant pursuant to a Settlement Agreement pending resolution of plaintiff's ultimately unsuccessful challenge to the termination of its eligibility to participate in the Pell Grant Program.

        Reversed and remanded.

_____

        [*]  Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Secretary of the Department of Education Margaret Spellings is automatically substituted for former Secretary of the Department of Education Richard W. Riley as defendant-appellant in this case.

1

NATHAN LEWIN (Alyza D. Lewin, on the brief), Lewin & Lewin, LLP, Washington, D.C., for Plaintiff-Appellee.

SHEILA M. GOWAN (Michael J. Garcia, United States Attorney for the Southern District of New York; Kathy S. Marks, Assistant United States Attorney, of counsel), New York, New York, for Defendant-Appellant.

MINER, <u>Circuit Judge</u>:

Richard W. Riley, originally named as defendant-appellant, in his official capacity as the then-Secretary of the United States Department of Education ("DOE"), appealed from a summary judgment entered in the United States District Court for the Southern District of New York (Owen, <u>J.</u>) in favor of plaintiff-appellee Beth Medrash Eeyun Hatalmud ("BMEH"), an educational institution devoted to Judaic and Rabbinical studies. The judgment directed payment with interest of the portion of Pell Grant funds that was withheld by the DOE, pursuant to a Settlement Agreement, pending resolution of BMEH's ultimately unsuccessful challenge to the termination of its eligibility to participate in the Pell Grant Program. The District Court determined that the funds withheld should be treated as a bond posted by BMEH under the security provision of a temporary restraining order previously issued but subsequently dissolved. We disagree with that determination for the reasons that follow.

**BACKGROUND**

The Pell Grant Program (the "Program"), established under Title IV of the Higher Education Act of 1965, provides grants to assist students in need of financial aid for meeting the costs of their post-secondary education. <u>See</u> 34 C.F.R. § 690.1. Under the Program, the DOE has discretion to provide funds, through several different methods, to institutions participating in the Program. <u>See</u> <u>id.</u> § 668.162(a)(1). The method of funding for BMEH was called the "reimbursement method," in which the school

3

paid student awards from institutional funds and later sought reimbursement from the DOE.  Id. § 668.162(d)(1).

In February, 1994, the DOE issued a notice for the termination of BMEH's eligibility to participate in the Pell Grant Program.  The basis for the termination was the DOE's finding that BMEH did not prepare its students for employment in a recognized occupation, a requirement for Pell Grant eligibility.  Hatalmud v. Riley, No. 97-cv-2035 (RO), 1998 WL 1570, at *1 (S.D.N.Y. Apr. 3, 1998).  On July 10, 1995, BMEH brought an action in the United States District Court for the Southern District of New York challenging the DOE's decision that it would not pay BMEH's requests for reimbursement pending an administrative decision on whether BMEH's eligibility was properly terminated.  When BMEH brought its action, it simultaneously sought a temporary restraining order ("TRO") requiring the DOE to pay two requests for reimbursement that previously had been submitted and remained unpaid.

At the hearing on the TRO, the District Court, in granting BMEH's reimbursement requests, stated:  "[I]t seems to me that it is in order to direct that payments be forthwith resumed, made or otherwise."  The DOE thereupon requested a bond, in accordance with Fed. R. Civ. P. 65(c), to secure the DOE for any costs and damages it might suffer if the TRO were found to be wrongfully issued.  BMEH's counsel suggested that the DOE "hold back ten percent of the payments as a bond" because "[t]here are loans to everyone."  Adopting this suggestion, the District Court directed

4

the DOE to withhold ten percent of the ordered reimbursements as a Rule 65(c) bond. On July 14, 1995, the court issued a written Order granting the TRO, requiring the DOE to release "all monies due to [BMEH]," and, "[i]n lieu of a bond," permitting the DOE to withhold "ten percent (10%) of the monies currently held by it." The Order also scheduled a hearing on the preliminary injunction sought by BMEH to require future reimbursement payments pending trial. On July 28, 1995, prior to any further proceedings, the parties resolved their dispute in its entirety and entered into a Settlement Agreement.

Under the terms of the Settlement Agreement, the DOE admitted neither the factual allegations in BMEH's complaint nor liability on account of any of the facts or circumstances alleged in the complaint. The parties agreed to seek expedited proceedings in the pending administrative proceedings relating to the DOE's proposed termination of BMEH's participation in the Pell Grant Program. The DOE also undertook to pay otherwise eligible claims for reimbursement submitted by BMEH during the pendency of the termination proceedings, except that the DOE "[would] be entitled to retain ten percent (10%) of the amount thereof pending final agency decision."

The parties agreed that the TRO would be dissolved and that "no force and effect" would be given "to the findings made on the record" by the District Court in connection with the TRO application. Finally, the parties stipulated that the action be dismissed with prejudice and without costs and that any dispute

5

relating to compliance with the terms of the Settlement be resolved by the District Court without the need to file a new action. The Stipulation of Settlement was "So Ordered" by the District Court on August 3, 1995.

Thereafter, an Administrative Law Judge ("ALJ") held a hearing on BMEH's eligibility to participate in the Pell Grant Program. On April 23, 1996, the ALJ issued a ruling that BMEH was not eligible to participate in the Program. Hatalmud v. Riley, No. 97-cv-2035 (RO), 1997 WL 223075, at *2 (S.D.N.Y. May 2, 1997). Following a remand by the Secretary of Education for a further elaboration of the ALJ's decision, the ALJ issued a more detailed decision on September 25, 1996. In the decision on remand, the ALJ reiterated his determination that BMEH was properly terminated from the Pell Grant Program, finding that, although "some students have found employment as teachers in the field of Orthodox Jewish education . . . , these programs were neither intended nor designed to prepare students for gainful employment in a recognized occupation." In re Hatalmud, No. 97-94-SP, 1998 EOHA Lexis 30, at *3 (Dep't of Educ. June 16, 1998). The ALJ accordingly concluded that BMEH did not meet the definition of an eligible institution. On January 27, 1997, the ALJ's decision was affirmed by the Secretary of Education as the final agency decision, and BMEH's participation in the Pell Grant Program was terminated as of that date. The Secretary's termination decision was upheld by the District Court in an Order dated April 2, 1998. Hatalmud v. Riley, No. 97-cv-2035 (RO),

6

1998 WL 157059, at *4 (S.D.N.Y. Apr. 2, 1998). BMEH did not appeal from that Order.

Meanwhile, on March 12, 1997, the DOE had issued a Final Program Review Determination ("FPRD"), concluding that BMEH was liable to the DOE for $16,403,631, which the DOE had calculated to be the amount of federal funds disbursed to BMEH under the Pell Grant Program since BMEH began its participation. The DOE ruled that, because BMEH's programs were ineligible for the Pell Grant Program, BMEH was required to refund to the DOE all federal funds it had received under the Program. On April 25, 1997, BMEH advised the DOE that its calculation was incorrect and that the liability should be reduced because the DOE had included the $452,008 that the DOE had retained pursuant to the Settlement Agreement. BMEH did not assert any right to the $452,008. The DOE agreed with BMEH's calculation, and, on May 7, 1997, issued a revised FPRD assessing a liability of $15,949,148, reducing the prior assessment by $452,008 to account for the retained amount. The DOE further agreed to reduce the liability to $15,764,431 based on additional calculations submitted by BMEH.

On June 27, 1997, BMEH challenged the DOE's liability assessment and requested an administrative hearing. In its statement of "Issues and Facts in Dispute," BMEH renewed its argument that its programs were eligible for federal funds and further argued that it would be unfair to require it to repay the funds because the money was received when it believed its educational program was eligible. BMEH did not in its statement

assert any claim for, or otherwise contest, the DOE's right to keep the $452,008 retained pursuant to the Settlement Agreement. For its part, the DOE continued to take the position that BMEH's program had been ineligible from its inception, and, therefore, that the federal funds had been improperly spent and must be returned.

On June 16, 1998, the Chief Administrative Law Judge, in a written opinion, addressed the issues raised in BMEH's appeal. The Chief Judge reaffirmed, on the grounds of res judicata, the previous determination that BMEH was ineligible to participate in the Pell Grant Program. Hatalmud, 1998 EOHA Lexis 30, at *7 n.3. However, the Chief Judge "conclude[d] that absent any evidence of fraud or misleading information, and based on the fact that the statutory provision and the regulations in question are subject to varying interpretation, it would be unfair and impermissible, and possibly a violation of substantive due process, to direct repayment of the amount in issue." Id. at *14. Accordingly, the Chief Administrative Judge ordered "that Beth Medrash Eeyun Hatalmud is relieved of any obligation to repay the United States Department of Education the sum of $15,949,148." Id.

On review, in his decision dated April 1, 1999, the Secretary of Education disagreed with the Chief Judge only to the extent of finding that the "standard [for program eligibility] is long-standing and was not newly interpreted when applied in this case," and "that evidence of fraud or misleading information is not necessary to establish that a given program is ineligible to

8

receive federal funds." Accordingly, the Secretary, rejecting BMEH's attempt to relitigate the finding of ineligibility, reiterated previous determinations by stating: "BMEH's programs do not meet the standards of an eligible vocational program, under the applicable statute." However, the Secretary found that, "[n]otwithstanding BMEH's ineligibility, . . . the specific facts of this case do not warrant the imposition of financial liability." Accordingly, the Secretary concluded his review by "affirm[ing] [the Chief Administrative Law Judge's] decision to relieve BMEH of financial liability but impose[d] a fine in the amount of $50,000."

Over five years later, on March 17, 2005, in the action it originally had brought to challenge the denial of reimbursement, BMEH moved in the District Court for an Order requiring the DOE to pay BMEH the $452,008 that the DOE had retained pursuant to the Settlement Agreement. Hatalmud v. Riley, No. 95-cv-5104 (RO), 2005 WL 3370500, at *1 (S.D.N.Y. Dec. 9, 2005). BMEH argued in its motion that the amount sought was a "bond" that BMEH had posted as "security" pursuant to Fed. R. Civ. P. 65(c). Id. BMEH argued that, since all matters between the parties were resolved, the DOE must return the "bond." BMEH also claimed that it was entitled to interest on the theory that the DOE was merely holding the funds as a bond. Hatalmud, 2005 WL 3370500, at *1.

In response, the DOE argued that, under the Settlement Agreement the parties resolved all of the claims asserted in BMEH's complaint, upon which the TRO was based, and that the

9

$452,008 the DOE retained was in consideration of the DOE's decision to forgo further litigation related to whether the DOE was required to pay BMEH's reimbursement requests while BMEH's eligibility to participate in the Pell Grant Program was being determined in the administrative termination proceedings -- proceedings that BMEH ultimately lost.

The District Court ruled in BMEH's favor, concluding that the Settlement Agreement imposed an obligation on the DOE to pay BMEH $452,008. Hatalmud, 2005 WL 3370500, at *1. In addition the court ruled that, since the $452,008 was BMEH's money held by the DOE, BMEH was entitled to interest. Id. Under the judgment, the interest would be calculated from the dates upon which the DOE retained the ten percent from BMEH's reimbursement requests. Id. at *1-2. The court also vacated the $50,000 fine, ruling that it had no support in the record and was imposed without a hearing and without reasons given. That ruling is not in issue here. Id. at *2.

In interpreting the Settlement Agreement, the District Court rejected the DOE's argument "that the [$452,008] is not, in fact, a `bond' or `security' posted under Rule 65(c) of the Federal Rules of Civil Procedure, but rather, is a benefit of the bargain that the DOE received . . . in exchange for its promise to pay BMEH's requests for reimbursement pending final agency decision in the administrative proceedings." Id. at *1. The court concluded that the "only reasonable understanding" of the language in the Settlement Agreement "is as a carry-over of the

10

security provisions that governed the TRO."  Id.  The court noted that, at the TRO hearing, it had directed ten percent of the reimbursement requests to be held as a Rule 65(c) bond, and had issued a written order three days later that "unequivocally" provides that the DOE could withhold that amount "[i]n lieu of a bond."  Id.

The District Court further noted that the Settlement Agreement, "signed only fourteen days later incorporated a similar provision, prescribing that ten percent would be withheld 'pending final agency decision.'"  Id.  Finally, because the District Court found that the $452,008 retained constituted "funds belonging to BMEH," it concluded that an award of interest would not be "an interest award against the United States" but an award "of interest earned on BMEH's money that BMEH was entitled to receive years prior, and which has since been in the temporary custody of the government."  Id.  This timely appeal by the DOE ensued.

**ANALYSIS**

On appeal, BMEH contends that its claim to the retained funds should be governed by the general rule that a district court's interpretation of ambiguous language should be affirmed unless clearly erroneous.  It argues that this rule "applies with even greater force" in this case, because the District Court so ordered the Settlement Agreement only two weeks after granting the TRO and therefore is in the best position to interpret the settlement terms.  BMEH notes that the percentage of payments

11

retained pursuant to the settlement was the same as the percentage retained in lieu of bond pursuant to the TRO.

In further support of the judgment below, BMEH contends that the "pending final agency decision" provision relative to the ten percent retainage "do[es] not suggest that the DOE may keep the withheld funds but only that they may be escrowed during the administrative proceeding." Apparently, the DOE maintained a separate escrow account for the withheld funds, and, according to BMEH, this "demonstrates that the DOE viewed the withheld funds as belonging to BMEH, not to the DOE, and as having been paid to BMEH by the transfer to the escrow account." BMEH asserts that the withheld funds were "only kept separately in case there would be some liability by BMEH at the end of the process." Finally, BMEH urges on appeal that, because it is the owner of the retained funds, it is entitled to interest earned on the funds despite the rule of sovereign immunity prohibiting the recovery of interest against the United States.

We review de novo the District Court's conclusions of law arising out of its interpretation of Settlement Agreement terms. See Omega Eng'g, Inc. v. Omega, S.A., 432 F.3d 437, 443 (2d Cir. 2005). In doing so, we apply the same tests as are applied by the District Court. See Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 232 F.3d 153, 157 (2d Cir. 2000). It is only where the District Court undertakes the interpretation of an ambiguity in an agreement, in the presence of extrinsic evidence of meaning,

12

that we apply a clearly erroneous standard of review. See U.S. Naval Inst. v. Charter Communications, Inc., 875 F.2d 1044, 1049 (2d Cir. 1989); Antilles S.S. Co. v. Members of American Hull Ins. Syndicate, 733 F.2d 195, 204 (2d Cir. 1984) (Newman, J., concurring). But whether or not an ambiguity exists is a question of law that we review de novo. See Tourangeau v. Uniroyal, Inc., 101 F.3d 300, 306 (2d Cir. 1996).

In disagreement with BMEH, we see no ambiguity in the Settlement Agreement in regard to the disposition of the withheld funds and so accord no deference on review to the District Court's interpretation. The fact that the Agreement was "so ordered" by the District Court does not affect our de novo examination here. The District Court's interpretation clearly was informed by its erroneous conclusion that the provision for 10% withholding was "a carry-over of the security provisions that governed the TRO." Hatalmud, 2005 WL 3370500, at *1.

While the District Court characterized its conclusion as the "only reasonable understanding" of the withholding provision of the Settlement Agreement, id., the parties specifically agreed to the dissolution of the TRO and "that they will give no force and effect to the findings made on the record by [the District Court]." Accordingly, the Settlement Agreement, as "so ordered" by the District Court, nullified the 10% "withholding as security" provision that became effective when the TRO was issued, and the District Court's observations that the Agreement contained a "similar provision" and was "signed only fourteen

13

days later" therefore are without significance.  Id. at *1-2.

Turning to the Settlement Agreement itself, there is no language anywhere within its four corners evidencing, in the words of the District Court, "a carry-over of the security provisions that governed the TRO."  Id. at *2.  Moreover, a security bond would have been pointless after the execution of the Settlement Agreement because the purpose of such a bond is to provide "for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained" by a TRO or a preliminary injunction during pending litigation.  See Fed. R. Civ. P. 65(c); see also Commerce Tankers v. Nat'l Maritime Union of America, 553 F.2d 793, 800 (2d Cir. 1977).  The following Stipulation included in the Settlement Agreement put an end to the pending litigation: "The action of the plaintiff against the defendant is hereby dismissed with prejudice and without costs."

As in all such agreements, the Settlement Agreement here represented a compromise between conflicting claims.  BMEH agreed to forego further District Court litigation and, in return, the DOE agreed to pay ninety percent of BMEH's reimbursement requests pending administrative determination of its entitlement to participate in the Pell Grant Program.  The parties agreed that their dispute would go forward to an administrative determination.  (A later challenge by BMEH to the administrative determination was made and rejected in the District Court.) "[The] agreement reached . . . embodie[d] a compromise; in

14

exchange for the saving of cost[s] and elimination of risk, the parties each gave up something they might have won had they proceeded with the litigation." United States v. O'Rourke, 943 F.2d 180, 186-87 (2d Cir. 1991) (quoting United States v. Armour & Co., 402 U.S. 673, 681-82 (1971)).

Referring generally to Pell Grant Program future payments to be made to BMEH, the ten percent withholding provision in the Agreement simply provides "that [the DOE] will be entitled to retain ten percent (10%) of the amount thereof pending final agency decision." In examining this provision, we recognize that "[t]he cardinal principle for the construction and interpretation of . . . contracts . . . is that the intention of the parties should control." SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC, 467 F.3d 107, 125 (2d Cir. 2006)(internal quotation marks omitted). Moreover, "the best evidence of intent is the contract itself; if an agreement is complete, clear and unambiguous on its face, it must be enforced according to the plain meaning of its terms." Eternity Global Master Fund, Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004)(internal quotation marks and brackets omitted). The language here is complete, clear and unambiguous and evidences the clear intention of the parties: Disbursement of the withheld funds is to abide the event of the final DOE determination; if the DOE were to prevail in the administrative proceeding, it would retain the funds; if BMEH were to prevail, the funds would be paid over to it.

The final DOE determination, manifested in the decision of the Secretary of Education dated April 1, 1999, and unchallenged here by BMEH, conclusively determined that BMEH was ineligible for participation in the Pell Grant Program ab initio. According to this decision, BMEH received almost sixteen million dollars over the years in Pell Grants, including $4.5 million paid while the termination proceedings were pending. Rather than requiring the repayment of these funds, and apparently strictly as a matter of grace, the Secretary forgave the debt: "Notwithstanding BMEH's ineligibility, . . . the specific facts of this case do not warrant the imposition of financial liability." This forgiveness of debt followed the Secretary's rejection of the reasons given by the Chief Administrative Judge for relieving BMEH's repayment obligation -- the absence of fraud and misleading information on the part of BMEH and the "varying interpretation[s]" of the applicable statutory provisions and regulations. Hatalmud, 1998 EOHA Lexis 30, at *10. The Secretary's decision relieved BMEH of an enormous debt, ex aequo et bono, and it does not lie in the mouth of BMEH to call for the payment of money which it never was entitled to in the first place.

BMEH's argument that the DOE maintained the withheld funds in a special escrow account and therefore viewed the funds as belonging to BMEH is unavailing. BMEH never was entitled to any Pell Grant funds, whether withheld or paid over. In this regard, it is noteworthy that the Secretary of Education did not relieve

16

BMEH from <u>legal</u> liability; he merely determined that "the specific facts of this case do not warrant the imposition of <u>financial</u> liability." (emphasis supplied).

As we have observed, both parties benefitted from the Settlement Agreement, which includes the "winner take all" element of the ten percent withholding provision. <u>See</u> <u>EEOC v. Local 40, Int'l Ass'n Bridge Workers</u>, 76 F.3d 76, 79–81 (2d Cir. 1996). BMEH acknowledged the purpose and intent of that provision by objecting to the DOE's calculation of the entire Pell Grant liability for failure to reduce the amount of total liability by the $452,008 of withheld money in the DOE's possession. It was not until five years later that BMEH reversed course and concocted the theories that led to the judgment that is the subject of this appeal.

In light of the foregoing, it is unnecessary for us to address the issue raised by the District Court's award of interest against the United States.

## CONCLUSION

The judgment of the District Court is reversed, and the case is remanded for the entry of judgment in favor of defendant-appellant.