**In re MF GLOBAL INC., Debtor.**

**PricewaterhouseCoopers LLP, Appellant,**

v.

**James W. Giddens, as Trustee for the SIPA Liquidation of MF Global, Inc.; Customer Representatives in the Commodities Class Action, Represented by Court–Appointed Interim Co–Lead Counsel in the Commodities Action and Court–Appointed Executive Committee Class Counsel with Interim Co–Lead Class Counsel, Appellees.**

**No. 12 Civ. 8367 (VM).**

United States District Court, S.D. New York.

July 23, 2013.

James J. Capra, Jr., James P. Cusick, David M. Fine, King & Spalding LLP, New York, NY, for Appellant.

Jeffrey Steven Margolin, Hughes Hubbard & Reed LLP, New York, NY, Jonathan David Pressment, Haynes and Boone, LLP, New York, NY, for Appellee.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

On August 15, 2012, James W. Giddens (the "Trustee"), as Trustee for the liquidation of the business of MF Global Inc. ("MFGI") filed the Trustee's Motion for Entry of an Order Approving Agreement to Cooperate with and Assign Certain Claims to Class Action Plaintiffs in Pending Actions and to Distribute Funds Recovered to Customers ("Trustee's Motion") with Judge Martin Glenn of the United States Bankruptcy Court of the Southern District of New York (the "Bankruptcy Court"). On August 29, 2012, PricewaterhouseCoopers LLP ("PwC") filed a limited objection to Trustee's Motion ("PwC's Limited Objection"). The Bankruptcy Court issued an opinion granting the Trustee's Motion on October 2, 2012 (the "October 2, 2012 Opinion") and instructed the Trustee to submit an order consistent with the October 2, 2012 Opinion. By Order dated October 11, 2012 (the "October 11, 2012 Order"), the Bankruptcy Court granted the Trustee's Motion. On October 12, 2012, PwC appealed the October 11, 2012 Order to this Court solely as it related to the assignment of any claims of MFGI against PwC. That same day, PwC also moved for a stay of the October 11, 2012 Order pending appeal. On November 1, 2012, the Bankruptcy Court denied PwC's motion to stay.

## I. BACKGROUND

This appeal arises out of the liquidation of MFGI pursuant to the Securities Inves-

tor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa et seq. It is unnecessary to recount the entire history of the collapse of MF Global here and the Court will limit its discussion to the contracts at issue in this appeal.

On January 18, 2010, PwC and MFGI, by endorsed letter (the "January 18, 2010 Letter"), agreed to terms by which PwC would serve as MFGI's independent accountant and audit its financial statements for the fiscal year ending March 31, 2010. The January 18, 2010 Letter provided that MFGI and PwC agreed that they would "not, directly or indirectly, agree to assign or transfer this engagement letter or any rights, obligations, claims or proceeds from claims against [PwC] arising under this engagement letter to anyone...." Decl. of James J. Capra, Jr., Ex. 2 at 5, *In re MF Global Inc.*, No. 11–2790 (Bankr.S.D.N.Y. Aug. 29, 2012), Dkt. No. 3084-1. On June 24, 2010, PwC and MFGI, by endorsed letter (the "June 24, 2010 Letter"), agreed that PwC would continue as MFGI's independent accountant and would audit its financial statements for the fiscal year ending March 31, 2011. The June 24, 2010 Letter contained an identical anti-assignment provision.

On October 31, 2011, MFGI's parent company, MF Global Holdings, Ltd. ("MFGH"), filed for protection under Chapter 11 of the Bankruptcy Code, after which the Securities Investor Protection Corporation commenced a proceeding to liquidate under SIPA (the "SIPA Liquidation") before Judge Martin Glenn of the Bankruptcy Court. Upon the commencement of the SIPA liquidation, the Trustee began an investigation of the causes and consequences of the collapse of MFGI.

On April 23, 2012, May 7, 2012, and July 3, 2012, the United States Judicial Panel on Multidistrict Litigation consolidated before this Court several civil actions arising from the collapse of MFGI and MFGH, including twelve proposed class actions against, among others, senior management of MFGI and MFGH on behalf of commodity customers from whom, it is alleged, approximately $1.6 billion in property on deposit at MFGI was misappropriated to satisfy proprietary debts. *See* Transfer Order, *In re MF Global Holdings Ltd. Inv. Litig.*, No. 12 MD 2338 (S.D.N.Y. Apr. 24, 2012), Dkt. No. 1; Transfer Order, *In re MF Global Holdings Ltd. Inv. Litig.*, No. 12 MD 2338 (S.D.N.Y. May 7, 2012), Dkt. No. 4; Transfer Order, *In re MF Global Holdings Ltd. Inv. Litig.*, No. 12 MD 2338 (S.D.N.Y. July 3, 2012), Dkt. No. 11. On May 21, 2012, the Court appointed a coalition of plaintiffs (the "Customer Representatives") as lead plaintiffs in the twelve consolidated commodity customer class actions.

On June 4, 2012, the Trustee submitted the Report of the Trustee's Investigation and Recommendations in the SIPA Liquidation. The Report disclosed that the Trustee was evaluating potential negligence and breach of fiduciary duty claims against the officers and directors of MFGI and MFGH and other former MF Global employees to recover customer property. It also confirmed that the Trustee had retained counsel "to investigate and report on the activities of PwC in relation to MF Global." Report of the Tr.'s Investigation and Recommendations at 53 n. 38, *In re MF Global Inc.*, No. 11–2790 (Bankr. S.D.N.Y. Aug. 29, 2012), Dkt. No. 1865.

The Trustee's Motion sought to assign to the Customer Representatives the Trustee's potential claims against former directors, officers, and/or employees of MFGI and MFGH, as well as those against PwC, as MFGI's former independent auditor. PwC's Limited Objection objected solely to the assignment of claims against PwC, citing the anti-assignment provisions

contained in the January 18, 2010 Letter and the June 24, 2010 Letter. Following the submission of additional briefing by the Trustee and PwC, as well as oral argument, the Bankruptcy Court granted the Trustee's Motion and instructed the Trustee to submit a proposed order for its endorsement. *See* Mem. Op. Granting SIPA Tr.'s Mot., *In re MF Global Inc.*, No. 11–2790 (Bankr.S.D.N.Y. Oct. 2, 2012), Dkt. No. 3581. By Order dated October 11, 2012, the Bankruptcy Court approved the Amended Agreement to Cooperate with and Assign Certain Claims to Class Action Plaintiffs in Pending Actions and to Distribute Funds Recovered to Customers (the "Continuing Cooperation and Assignment Agreement"). *See* Order, *In re MF Global Inc.*, No. 11–2790 (Bankr.S.D.N.Y. Oct. 11, 2012), Dkt. No. 3764.

On November 5, 2012, the Customer Representatives filed the Consolidated Amended Class Action Complaint, asserting, among others, professional negligence and breach of fiduciary duty claims against PwC on behalf of the Trustee.

## II. *LEGAL STANDARD*

■ "As a general matter, the objective of contract interpretation is to give effect to the expressed intentions of the parties." *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989). "The best evidence of what parties to a written agreement intend is what they say in their writing." *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir.2010) (internal citation omitted). "Thus, a written agreement that is complete, clear and unambiguous on its face must be [interpreted] according to the plain meaning of its terms, without the aid of extrinsic evidence." *Id.* (citations omitted).

■ Courts should read the integrated contract "as a whole to ensure that undue emphasis is not placed upon particular words and phrases and to safeguard against adopting an interpretation that would render any individual provision superfluous." *Id.* (internal citations and quotations omitted). Courts may not "by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." *Bailey v. Fish & Neave*, 8 N.Y.3d 523, 528, 837 N.Y.S.2d 600, 868 N.E.2d 956 (2007) (internal quotation marks omitted). "[I]f the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity." *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 570, 750 N.Y.S.2d 565, 780 N.E.2d 166 (2002).

■ The Bankruptcy Court's conclusions of law arising out of its interpretation of the anti-assignment provisions contained in the January 18, 2010 Letter and the June 24, 2010 Letter are reviewed de novo. The Trustee and the Customer Representatives urge this Court to subject the Bankruptcy Court's conclusions of law to review under the "clearly erroneous" standard. *See In re Delphi Corp.*, 394 B.R. 342, 344 (S.D.N.Y.2008) ("In reviewing a lower court's contract interpretation, a de novo standard is used when the contract at issue is unambiguous, but a clearly erroneous standard is employed only where a court is reviewing an ambiguous agreement.") (citations omitted).

■ The Trustee and the Customer Representatives argue that PwC has "insert[ed] ambiguity into the matter" by disputing the meaning of the terms of the anti-assignment provisions. Appellee SIPA Trustee's Br. in Opp'n at 4; *see also* Appellee Customer Representatives Br. in Opp'n at 2 n. 3. However, "contractual

ambiguity is not established simply because the parties disagree as to the meaning of a particular provision." *Libra Bank Ltd. v. Banco Nacional De Costa Rica, S.A.,* 570 F.Supp. 870, 893 (S.D.N.Y.1983). It is only where the lower court "undertakes the interpretation of an ambiguity in an agreement, in the presence of extrinsic evidence of meaning, that we apply a clearly erroneous standard of review." *Hatalmud v. Spellings,* 505 F.3d 139, 145 (2d Cir.2007).

In this action, the Bankruptcy Court did not consider any extrinsic evidence in interpreting the anti-assignment provisions of the January 18, 2010 Letter and the June 24, 2010 Letter. Therefore, the Court will review de novo the Bankruptcy Court's conclusions of law.

## III. *DISCUSSION*

The Trustee moved before the Bankruptcy Court to assign its claims against PwC to the Customer Representatives pursuant to Section 363(b)(1) of the Bankruptcy Code ("Section 363(b)(1)"), which permits the Trustee to "use, sell, or lease, other than in the ordinary course of business, property of the estate. . . ." 11 U.S.C. § 363(b)(1). On appeal, PwC argues that the assignment of the Trustee's claims against PwC to the Customer Representatives is impermissible, because the contracts governing the relationship between MFGI and PwC prohibit such assignment.

■ As a preliminary matter, the Trustee argues that PwC's appeal of the October 11, 2012 Order is moot pursuant to Section 363(m) of the Bankruptcy Code ("Section 363(m)"). Section 363(m) provides:

The reversal or modification on appeal of an authorization under subsection (b)

or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). Because the Bankruptcy Court denied PwC's motion to stay, the Trustee argues, PwC cannot affect the validity of the Trustee's assignment of its claims to the Customer Representatives.

While Section 363(m) provides that "reversal or modification on appeal of an authorization ... of a *sale or lease* does not affect the validity of [that] sale or lease," it does not address the "use" prong of Section 363(b)(1). 11 U.S.C. § 363(m) (emphasis added). As ably argued by the Customer Representatives in opposing PwC's motion to stay before the Bankruptcy Court, "use" of property of the estate, under Section 363(b)(1), "falls squarely outside the plain language of Section 363(m)." Joinder of Customer Representatives at 3, *In re MF Global Inc.,* No. 11–2790 (S.D.N.Y. Oct. 24, 2012), Dkt. No. 4009 (*citing In re PW, LLC,* 391 B.R. 25, 35 (9th Cir. BAP 2008) ("[A] plain-language reading of the section would not give § 363(m) protection to an out-of-the-ordinary-course use approved by a bankruptcy court.")). The Court is persuaded that Section 363(m) applies only to authorizations to sell or lease estate property, not to authorizations to use estate property under Section 363(b)(1). Because the Trustee did not sell or lease, but instead assigned, its claims against PwC to the Customer Representatives, Section 363(m) does not moot PwC's appeal.[1]

---

**1.** In its brief, the Trustee cites several cases for the proposition that Section 363(m) moots

PwC's appeal. *See* Appellee SIPA Trustee's Br. in Opp'n at 10–12, Dec. 14, 2012, Dkt.

▆ The anti-assignment provisions at issue prohibit the assignment of any claims of MFGI against PwC "arising under" the January 18, 2010 Letter and the June 24, 2010 Letter. Decl. of James J. Capra, Jr., Exs. 1, 2, *In re MF Global Inc.*, No. 11–2790 (Bankr.S.D.N.Y. Aug. 29, 2012), Dkt. No. 3084–1. The parties dispute whether the Trustee's claims, which sound in tort not in contract, against PwC in fact "aris[e] under" the January 18, 2010 Letter and the June 24, 2010 Letter. *Id.*

In the Second Circuit, the "arising under" contractual language at issue here has been narrowly construed to exclude tort claims. In *Petition of Kinoshita & Co.*, 287 F.2d 951 (2d Cir.1961), the Second Circuit held that the use of the phrase "arising under" an agreement, in an arbitration clause, indicated that the parties intended the clause to be narrowly applied and, on that basis, concluded that a claim of fraud in the inducement did not "aris[e] under" that agreement for purposes of the arbitration clause. *Id.* at 953. PwC argues that *Kinoshita* has been confined to "its precise facts." *ACE Capital Re Over-seas Ltd. v. Central United Life Ins. Co.*, 307 F.3d 24, 33 (2d Cir.2002). While this is true, those "precise facts" have been defined as the precise "arising under" language at issue in this action. *See Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 225–26 (2d Cir.2001) ("We have, however, since limited this holding to its facts, declaring that absent further limitation, only the precise language in *Kinoshita* would evince a narrow clause. . . . [Only] the ['arising under'] phrase limits arbitration to a literal interpretation or performance of the contract.") (citations omitted); *ACE Capital*, 307 F.3d at 33 ("[B]ecause *Kinoshita* must be confined to its 'precise facts'—that is, to the phrase 'arising under' or, at most, to 'its equivalent,' the case has no application here.") (internal citation omitted).[2]

In the Second Circuit, courts have interpreted more expansive contractual provisions than the "arising under" language at issue to encompass tort claims. *See, e.g., Turtur v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304, 309–10 (2d Cir.1994) (holding that a contract's choice of law provision

No. 15 (*citing In re Baker*, 339 B.R. 298 (E.D.N.Y.2005); *In re Metaldyne Corp.*, 421 B.R. 620 (S.D.N.Y.2009); *In re Motors Liquidation Co.*, 430 B.R. 65 (S.D.N.Y.2010); *In re Gucci*, 105 F.3d 837 (2d Cir.1997)). However, each of the cases cited by the Trustee concerns an authorization to sell estate property, not use estate property, and is therefore distinguishable from this action. *See Baker*, 339 B.R. at 302–03; *Metaldyne*, 421 B.R. at 625–26; *Motors Liquidation*, 430 B.R. at 77–78; *Gucci*, 105 F.3d at 839–40.

**2.** PwC also cites to *B.D. Cooke & Partners Ltd. v. Certain Underwriters at Lloyd's London*, No. 08 Civ. 3435, 2010 WL 779783 (S.D.N.Y. Mar. 9, 2010) for the proposition that *Kinoshita* is distinguishable from this action, because *Kinoshita* involved a claim for fraud in the inducement "related to pre-contract behavior that induced the agreement, not to interpreting the contract or to performance." *Id.* at *3. PwC argues that the Trustee's tort claims

here relate to performance, not inducement, and that therefore, pursuant to *B.D. Cooke*, these claims "aris[e] under" the January 18, 2010 Letter and the June 24, 2010 Letter, even if a fraud in the inducement claim would not. Decl. of James J. Capra, Jr., Exs. 1, 2, *In re MF Global Inc.*, No. 11–2790 (Bankr. S.D.N.Y. Aug. 29, 2012), Dkt. No. 3084–1. However, in *B.D. Cooke*, the plaintiff asserted three claims: (a) breach of contract; (b) accounts stated; and (c) a request for declaratory relief related to the assignment of the first two claims to the plaintiff from the real party in interest. The court concluded that all three claims "arose under" the contract at issue, thereby invoking the contract's arbitration clause. *Id.* at *3–4. Because none of these three claims sounded in tort, *B.D. Cooke* did not address the question of whether such "arising under" language covers tort claims, such as those at issue here, and it is inapplicable to the current proceeding.

that covers any controversy "arising out of or relating to" the contract was "sufficiently broad to cover tort claims as well as contract claims."). In *Dichiara v. Ample Faith Investments Ltd.*, No. 06 Civ. 3838, 2006 WL 3431197 (S.D.N.Y. Nov. 29, 2006), the court held that a breach of fiduciary duty claim, one of the tort claims at issue in this action, was covered by a contract's jurisdictional clause that encompassed "any of the obligations arising under or relating to" the contract:

> Here, the language of the jurisdiction-conferring clause is of the more expansive variety. It covers all actions that pertain to 'any of the obligations arising under or relating to' the Stockholders Agreement. DiChiara's claim for breach of fiduciary duty implicates one such obligation. Indeed, each of DiChiara's claims 'relat[es] to' the Stockholders Agreement, since those claims 'depend on rights and duties that must be analyzed by reference to the contractual relationship.'

*DiChiara*, 2006 WL 3431197, at \*4–5 (quoting *Direct Mail Prod. Serv. Ltd. v. MBNA Corp.*, No. 99 Civ. 10550, 2000 WL 1277597, at \*6 (S.D.N.Y. Sept. 7, 2000)). While the Trustee's tort claims at issue arguably "relate to" the January 18, 2010 Letter and the June 24, 2010 Letter, they do not "aris[e] under" them and are therefore not covered by their respective anti-assignment provisions. The anti-assignment provisions in the January 18, 2010 Letter and the June 24, 2010 Letter apply only to contractual claims arising from a "literal interpretation or performance of the contract," *Louis Dreyfus*, 252 F.3d at 226, and not to the independent tort claims at issue here.

■ In the alternative, PwC argues that the Trustee's tort claims are essentially contract claims in disguise and that, therefore, the anti-assignment provisions

of the January 18, 2010 Letter and the June 24, 2010 Letter should apply in equal force to prohibit their assignment. In support, PwC cites to several cases standing for the proposition that, under New York law, a plaintiff may not assert breach of contract claims and tort claims based on the same underlying facts, because, in such circumstances, the two claims are duplicative or redundant. *See, e.g., ATC Healthcare Inc. v. Goldstein, Golub & Kessler LLP*, 958 N.Y.S.2d 59 (Sup.Ct.2009) ("Plaintiff's allegations of breach of contract and negligence are based on the same actions of misconduct that give rise to the accounting malpractice claim. As such, these causes of action are redundant of the malpractice claim and shall be dismissed."); *RGH Liquidating Trust v. Deloitte & Touche LLP*, 47 A.D.3d 516, 851 N.Y.S.2d 31, 32–33 (2008) ("[P]laintiff's fraud claims were properly dismissed as duplicative of its breach of contract claim, since they are based on alleged fraudulent misrepresentations related to defendants' obligations under their agreements ... to conduct audits of financial statements with reasonable care, and allege no misrepresentations collateral or extraneous to the agreements."); *Diamond v. Sokol*, 468 F.Supp.2d 626, 640 (S.D.N.Y.2006) ("Plaintiff's breach of contract claim must ... be dismissed as duplicative of her legal malpractice claim.")

This argument is unpersuasive. First, the cases cited by PwC are inapplicable. The Customer Representatives have not asserted any breach of contract claims against PwC on behalf of the Trustee and, as such, the tort claims at issue are neither duplicative or redundant.

■ Second, under New York law, tort claims, when based on the violation of an independent legal duty, arise independently from breach of contract claims, even

where they are based on the same underlying facts:

> Conduct constituting a breach of contract nevertheless is actionable in tort if a legal duty independent of the contract itself has been violated. Such a duty may be independent of a contract and yet emerge from a relationship of trust and confidence created by a contract, as in the case of a lawyer and client. In other words the same conduct which may constitute the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract but which is independent of the contract itself.

*Bullmore v. Banc of Am. Sec. LLC,* 485 F.Supp.2d 464, 469–70 (S.D.N.Y.2007) (internal quotations omitted). While the professional and fiduciary duty that PwC owed MFGI was created by the January 18, 2010 Letter and the June 24, 2010 Letter, the duty exists independent of the contract and breach of that duty can serve as the independent basis for the assertion of tort claims. *See Sommer v. Federal Signal Corp.,* 79 N.Y.2d 540, 551–52, 583 N.Y.S.2d 957, 593 N.E.2d 1365 (1992) ("[A] contracting party may be charged with a separate tort liability arising from a breach of a duty distinct from, or in addition to, the breach of contract.... A legal duty independent of contractual obligations may be imposed by law as an incident to the parties' relationship.... In these instances, it is policy, not the parties' contract, that gives rise to a duty of due care."); *Berg v. Eisner* LLP, 94 A.D.3d 496, 941 N.Y.S.2d 616, 617 (2012) ("Given the parties' accountant-client relationship, the scope of defendants' duty to plaintiff is no narrower than the terms of the parties' agreement, and may be broader, based on professional accounting standards."). The tort claims at issue in this action are not breach of contract claims in disguise, but rather arise from PwC's independent legal duty to MFGI as its auditor.

## IV. *ORDER*

For the reasons discussed above, this Court affirms the United States Bankruptcy Court's Order dated October 11, 2012. The request of PricewaterhouseCoopers LLP to set aside the October 11, 2012 Order of the United States Bankruptcy Court solely as it relates to the assignment of any claims of MF Global Inc. against PricewaterhouseCoopers LLP is **DENIED.**

**SO ORDERED.**

